UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| GENESSON BERAUT, | |
| Plaintiff, | No. 5:24-CV-163-DCR-HAI |
| v. | RECOMMENDED DISPOSITION |
| BRIAN OWENS, | |
| Defendant. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Genesson Beraut, a state prisoner proceeding *pro se*, brings this civil-rights lawsuit against his former prison guard, Brian Owens, also proceeding *pro se*. Defendant Owens has moved for summary judgment, and the undersigned recommends that summary judgment be granted and the suit be dismissed.

## I. Background

Beraut's Complaint was filed on June 13, 2024. D.E. 1. Since then, his claims have been whittled down to an excessive-force claim against Defendant Owens in his individual capacity. The claim centers on a single brief incident. According to the Complaint, while Beraut was a prisoner at Northpoint Training Center, Owens "[used] excessive force when he sprayed me with 'OC' while I was naked in the middle of a strip search." *Id*. at 4.[1] "OC spray," or Oleoresin Capsicum spray, is a type of pepper spray that uses capsaicin, a compound from hot chili peppers, as its active ingredient. When sprayed, it causes intense irritation, pain, involuntary eye

---

[1] Beraut initially complained that Owens also pulled his dread locks following the OC-spray incident. D.E. 1 at 5. But, once evidence was provided that showed Owens had no further contact with Beraut after he left the strip-search room, Beraut admitted that he could not prove Owens pulled his dread locks. D.E. 32 at 3-4.

closure, coughing, and shortness of breath by inflaming the eyes and respiratory system. OC spray serves as a less-lethal weapon for personal defense, law enforcement, and crowd control, though its effects are temporary and individuals typically recover fully without lasting harm.[2]

Beraut alleges, "After following all commands given to me by Officer Owens he proceeded to spray me with a large can of Oleoresin Capsicum or 'OC.' This was all while I was naked in the Office of Dorm 5 at Northpoint Training Center with my hands up and visible." D.E. 1 at 5. Beraut asserts that Owens had "targeted" him on account of his Rastafarian religion. *Id*. Filling in more detail, Beraut states:

> On July 20, 2023 I was laying in my bed at Northpoint Training Center in the Dorm 5 Upper Right wing, when I was awoken by Officer Brian Owens who was also accompanied by Officer Lane Erwin. Officer Owens would then order me out of my bed for an area search at which time I complied. After the bed area search was completed I was then ordered to come to the Dorm 5 Office where Officer Owens ask the first shift Captain Lee May to execute a strip search which was granted by Captain May. I entered the Dorm 5 Office with Officer Owens accompanied by Officer(s) Lane Erwin and Richard Grimes. Officer Owens proceeded to instruct me to take off each item of clothing individually in which he inspected and garnered negative results. He would then ask to turn toward him and pick up my genitals, then I was asked to turn around squat and cough (3 times). Officer Owens then instructed to "bend over and spread your cheeks." Upon this request I simply ask him "is that necessary," Officer Owens would then proceed to spray me with a large can of Oleoresin Capsicum or "OC."

D.E. 1-1 at 1. It now appears that Beraut and Owens were separated after this OC spray deployment and had no further interactions that day. *See* D.E. 1-1 at 20; D.E. 31-1 at 11.[3]

Along with the Complaint, Beraut included a disciplinary report that contains Owens's recollection of the incident, provided on the same date. According to Owens's July 20, 2023 statement:

> On July 20, 2023 at approximately 2:15pm, I Officer Brian Owens along with Officer Lane Irwin contacted the Shift Supervisor to get permission to

---

[2] *See* Wikipedia, Pepper Spray, https://en.wikipedia.org/wiki/Pepper_spray.

[3] Page number references are to the page numbers generated by ECF.

2

> conduct a strip search on Genesson Beraut #318204 due to suspicion of dangerous contraband. At approximately 2:20pm, Inmate Beraut was escorted to the dorm 5 Office where we began the search. During the strip search, I told inmate Beraut that he needed to bend at the waist and spread his buttox [sic] so that the anal area could be visually inspected. Inmate Beraut stated that he was not going to comply with the orders given. I gave him a second directive to bend at the waist and spread his buttox so I could complete the search. Inmate Beraur turned around to face me and stated that he was not going to do what I asked. At this time, I removed my OC and gave him a directive to turn back around and do what I asked. Inmate Beraut stated No! Al this time, I deployed a short burst of OC to the facial region on Inmate Beraut. After deploying OC, Officer Irwin placed Inmate Beraut in mechanical wrist restraints. Officer Irwin announced that OC was deployed in the Office. I assisted Inmate Beraut in putting his clothes back on so that he could be escorted to the Special Management Unit. At this time, other officers arrived in dorm 5 to assist in escorting Inmate Beraut.

D.E. 1-1 at 20.

Beraut also provided a report with the findings of the disciplinary investigation. According to this report, Beraut "was found guilty of 3-2 Disobeying a direct order. I find inmate Guilty Based on 1. Initial Report, of reporting staff 2. Investigation: Sgt Harris conducted the investigation, reviewed all attached documents, and verified the above report. 3. Inmate admits guilt[.]" D.E. 1-1 at 22. Beraut was sentenced to ten days of disciplinary segregation. *Id*. Beraut appealed this decision, but the warden denied the appeal. *Id*. at 23.

Beraut filed grievances regarding the pepper-spray incident, but those grievances were denied as untimely. *See* D.E. 1-1 at 2-19.

Beraut filed this action in the Western District of Kentucky, but it was then transferred here. D.E. 5. In a screening order issued June 18, 2024, District Judge Reeves dismissed all charges aside from the personal-capacity excessive-force claim against Defendant Owens. D.E. 10. Owens appeared *pro se* via Answer on October 24, 2024. D.E. 23. Judge Reeves gave the parties additional time to attempt to secure counsel. D.E. 24. On January 6, 2025, the matter

3

was referred to the undersigned, with both parties proceeding without counsel. D.E. 25. The same day, the Court entered a scheduling order. D.E. 26.

On July 2, 2025, Owens filed a "Response to Lawsuit," which the Court construed as a motion for summary judgment. D.E. 29, 30, 31. This filing also includes various attachments. D.E. 31-1. On August 5, Beraut responded to the motion, accompanied by various attachments. D.E. 32. On September 5, Owens filed his reply memo, with attachments. D.E. 33.

## II. General Legal Standards

Summary Judgment under Federal Rule of Civil Procedure 56 "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A defensive motion for summary judgment under Rule 56 challenges the viability of the other party's claim by asserting that at least one essential element of that claim is not supported by legally sufficient evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). The Court "must view all evidence and draw all inferences in the light most favorable to the nonmoving party." *Codrington v. Dolak*, 142 F.4th 884, 890 (6th Cir. 2025).

> A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. The movant bears the initial burden of showing no dispute of material fact. If successful, the burden shifts to the non-movant to present facts showing a genuine issue exists for trial.

*Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross Blue Shield of Michigan*, 146 F.4th 496, 505 (6th Cir. 2025).

The moving party does not need its own evidence to support this assertion, but needs only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which

4

demonstrates that a factual question remains for trial. Fed. R. Civ. P. 56(c); *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003). "Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment." *Codrington*, 142 F.4th at 897.

Courts liberally construe the pleadings of *pro se* claimants and hold their petitions to a less stringent standard than similar pleadings drafted by attorneys. *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

### III. The Evidence and Material Facts

The first question on summary judgment is whether there exists a genuine dispute of material fact. Here, there is no dispute that Owens sprayed Beraut with OC during a strip-search. But different versions of the event exist in the record. And subsequent events, including Beraut's attempts to file grievances and the disciplinary proceedings against Beraut, also impact the outcome of this case.

The evidence before the Court consists of the following documents, provided here roughly in chronological order of their creation:

(1) A medical report from July 20, 2023, from a nurse, stating that Beraut decontaminated himself from the OC spray with baby shampoo in the shower. D.E. 31-1 at 10; 33-1 at 1.

(2) The July 20 internal report on the "use of force" incident between Owens and Beraut. D.E. 31-1 at 11-12.

(3) A July 21, 2023 letter to Northpoint's warden Kevin Mazza from Lt. Joey Sergent of Internal Affairs. D.E. 31-1 at 8-9; 33-1 at 2-3. Lt. Sergent describes his investigation and findings as follows:

5

      On July 20, 2023, Warden Kevin Mazza initiated an investigation of an Excessive Use of Force Incident to completed by Lieutenant Joey Sergent. On July 20, 2023, at 2:15 P.M. Officers Brian Owens and Lane Irwin completed an area search on Inmate Genesson Beraut #318204. After the area search, they escorted Inmate Beraut to the Dorm Five Office to conduct a strip search. While being escorted to the office, Inmate Beraut made the comment "this isn't going to turn out well." Inmate Beraut followed all directives that were asked of him by both officers until Officer Owens asked him to bend at the waist and spread his buttocks. Inmate Beraut's back was turned towards the officers and Inmate Beraut told the officers that he wasn't going to bend at the waist and spread his buttocks. Officer Owens gave Beraut three direct orders to bend at the waist and spread his buttocks, but Beraut informed them he wasn't going to do it. Officer Owens retrieved his Oleoresin Capsicum (OC) and sprayed the back of Inmate Beraut's head and back urea with the OC. Inmate Beraut was placed in mechanical wrist restraints and Officer Owens assisted him with putting his clothes back on before being escorted to The Special Management Unit (SMU).

      On July 21, 2023, Lieutenant Joey Sergent interviewed Inmate Genesson Beraut in SMU and asked him why he refused the order to bend at the waist and spread his buttocks. Inmate Beraut stated there were three officers in the office and he felt that it was degrading to perform what was asked of him by Officer Owens. Inmate Beraut stated his back was toward the officers and he did tell them that he wasn't going to bend at the waist and spread his buttocks. All staff involved were interviewed, and all explained the same series of events that occurred during the strip search.

      Officer Owens gave Inmate Beraut three directives to bend at the waist and spread his buttocks, which he refused. Inmate Beraut told the officers he wasn't going to bend at the waist and spread his buttocks. After Beraut refused three times, Officer Owens retrieved his OC and sprayed Inmate Beraut in the back and the back of his head area due to refusing the directive from Officer Owens to bend at the waist and spread his buttocks.

(4)    Records of the disciplinary investigation of *Beraut* (dated July 25) regarding the July 20 incident. As noted, Beraut was found guilty of disobeying a direct order, with a notation that he had admitted guilt. D.E. 1-1 at 20-23.

6

(5)   Beraut's July 31, 2023 grievance about the July 20 incident. It was ultimately deemed non-grievable by the warden for being filed outside the five-day window. D.E. 1-1 at 2-4.

(6)   Beraut's Criminal Complaint against Owens, signed August 2, 2023, with accompanying forms. D.E. 1-1 at 17-19.

(7)   Beraut's August 3 grievance about his July 31 grievance being dismissed as untimely. This grievance was also denied on the basis that there were avenues available for Beraut to file his grievance within the five-day window, despite his housing situation. D.E. 1-1 at 5-8.

(8)   A letter from Ombudsman Allyson Lambert of the Kentucky Department of Corrections (dated August 7, 2023), in which Lambert agrees with the warden that Beraut had opportunity to file his original grievance on time. D.E. 1-1 at 9, 13.

(9)   Documents related to Beraut's August 24, 2023 appeal of the denial of his grievance as untimely. The Commissioner agreed that Beraut had not been denied access to the grievance process. D.E. 1-1 at 10-16.

Some of these items have duplicate copies in the record, but the most legible versions have been cited. And, to be clear, the Complaint and the briefs themselves do not constitute evidence.

There is really no dispute that Owens pepper-sprayed Beraut after Beraut refused three times to "spread his buttocks." On the undisputed facts, the Court finds that Owens is entitled to judgment as a matter of law. First, particularly given Beraut's subsequent disciplinary conviction, the pepper-spray deployment, under the circumstances, did not rise to the level of an excessive use of force that shocks the conscience. Second, Owens is entitled to qualified immunity. Third, Beraut did not properly exhaust his administrative remedies.

### IV.  Excessive Force

### A.  Legal Standards

Because Beraut is a post-judgment state prisoner, his excessive-force claim proceeds under the Eighth Amendment. *Poynter v. Whitley Cnty. Det. Ctr.*, 722 F. Supp. 3d 745, 753 (E.D. Ky. 2024) (citing *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015)). The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Rafferty v. Trumbull Cty., Ohio*, 915 F.3d 1087, 1094 (6th Cir. 2019). "The Eighth Amendment protects prisoners only from that conduct which is 'repugnant to the conscience of mankind.'" *Id*. (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010)). "[T]he Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc) (quoting *Hudson v. McMillian*, 503 U.S. 1, 20 (1992)).

To state a proper claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component. *Moore v. Holbrook,* 2 F.3d 697, 700 (6th Cir. 1993).

The objective component requires the pain inflicted to be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). This is a "contextual" inquiry that is "responsive to contemporary standards of decency." *Hudson*, 503 U.S. at 8-9. No actual injury needs to be proven to state a viable claim under the Eighth Amendment. *Moore*, 2 F.3d at 700. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, whether or not significant injury is evident. *Hudson*, 503 U.S. at 9. Medical evidence and the extent of plaintiff's injuries should be evaluated with all the other

8

evidence in determining whether malicious or sadistic force was used. *Reist v. Orr*, 67 F.3d 300 (6th Cir. 1995). The constitutional prohibition of cruel and unusual punishments necessarily excludes *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Rafferty*, 915 F.3d at 1094 (quoting *Hudson*, 503 U.S. at 9-10).

The subjective component focuses on the state of mind of the prison officials. The relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson*, 503 U.S. at 6).

Courts considering an excessive force claim consider several factors, including the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the prison official, and any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321.

Finally, prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 321-22).

### B. No Excessive Use of Force

Applying the above factors from *Whitley* and *Hudson*, Owens is entitled to summary judgment. The first factor is the extent of the injury suffered. The only force Owens applied to Beraut was spraying him with OC. This no doubt irritated Beraut's eyes, but Beraut was able to wash the OC off with baby shampoo in the shower, and no lingering effects have been reported. This factor weighs against a finding of excessive force.

The Court also considers the need for the application of force and the relationship between the need and the amount of force used. Here, the OC deployment was done in response to Beraut refusing three commands to fully submit to a cavity search. As will be explored more fully below, this factor also weighs against finding excessive force. Beraut created a need to apply force, and the amount of force used was not sadistic or sufficiently serious under the circumstances.

The final factor considers the threat reasonably perceived by the prison official, and any efforts made to temper the severity of a forceful response. This is not a case of a forceful response to a threat.

Applying the *Whitley* factors indicates that Owens's pepper-spray deployment was not an *excessive* use of force in violation of the Eighth Amendment. Plaintiff's factual statements, taken as true, fail to establish excessive force.

The Court has also considered cases that specifically involve pepper-spray deployment. "In the Eighth Amendment context, the use of mace on prisoners *when they are not actively* disobedient is prohibited." *Poynter v. Whitley Cnty. Det. Ctr.*, 722 F. Supp. 3d 745, 755 (E.D. Ky. 2024) (emphasis added). "Although the use of mace on *recalcitrant* prisoners is constitutional, 'when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated.'" *Id*. (emphasis added) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

For example, the Sixth Circuit in *Roberson* denied qualified immunity to an officer who used mace to wake a sleeping prisoner. *Roberson v. Torres*, 770 F.3d 398, 406-07 (6th Cir. 2014). And, in *Williams*, the prisoner stated a valid excessive-force claim when he "allege[d] that, when instructed to 'pack up,' he inquired, 'What for, sir?' at which point an 'assault team'

10

entered the cell and used a chemical agent on him." *Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir. 2011). And, in *Poynter*, the prisoner alleged "he was quietly sitting in his cell" when the officer "approached and asked if he was kicking his cell door." *Poynter*, 722 F. Supp. 3d at 755. When the prisoner answered, "no," the officer "sprayed him in the face with an entire can of mace." *Id*.

These three cases are readily distinguishable from Beraut's. Here, on a suspicion of possession of contraband, Beraut's cell was searched. Beraut was then taken for a strip search. Although he initially complied, he then refused to bend over. Beraut subsequently ignored two additional commands to bend over. Only then was the OC deployed and the cavity search completed.

The Court again stresses the significance of the fact that Beraut was disciplined for his own behavior in this very incident. Disciplinary records provided by Beraut himself indicate Beraut was found guilty of "disobeying a direct order" and that he had admitted guilt to this infraction. D.E. 1-1 at 22. He was punished with ten days of disciplinary segregation. *Id*. Unlike the prisoners in the three cases described above, Beraut was recalcitrant and actively disobedient at the time Owens sprayed him. Thus, under cases dealing specifically with pepper-spray deployment, Owens's use of force under the circumstances was not unconstitutionally excessive.

Beraut argues in his response brief that the officers never lost "control" of the situation. D.E. 32 at 4. He says he was "never combative nor disrespectful" toward Owens, and Owens could have instead taken Beraut for an x-ray. *Id*. Nevertheless, the standard in excessive-force cases is that pepper spray is not excessive when used on a recalcitrant and actively disobedient prisoner. Here, Beraut had refused three commands with no indication he was ready to comply.

11

Even if Owen's decision to pepper-spray him was not the best decision under the circumstances, it did not constitute constitutionally excessive use of force. Beraut also says Owens was fired as a result of this incident. *Id*. This fact is not established in the record. Although Owens appears to be no longer employed by the state prisons bureau, there is no evidence before the Court stating any reason for the termination. But, even assuming Owens was fired because of this incident, a prison's decision to terminate an officer does not compel the Court to make a finding of unconstitutionally excessive force.

### V. Qualified Immunity

In the alternative, Owens is entitled to qualified immunity.

> Qualified immunity protects state officials, including prison employees, so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In resolving qualified immunity claims, we ask whether: (1) the facts, viewed in the light most favorable to Plaintiff, show a violation of a constitutional right; and (2) the right at issue was clearly established at the time of the alleged misconduct.

*Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (internal citations and quotation marks omitted). "[Q]ualified immunity must be assessed in the context of each individual's specific conduct." *Id*. at 624. "The burden rests on Plaintiff to show Defendants are not entitled to immunity." *Id*. at 623.

Owens is entitled to qualified immunity. First, as discussed in the previous section, Beraut has not shown a constitutional violation. Beraut himself admits in his filings that he refused to bend over despite repeated commands. This leads to a finding he was being actively disobedient at the time of the OC deployment. Second, the law has been clearly established that a corrections officer may not pepper spray an inmate without reason. *Poynter v. Whitley Cnty. Det. Ctr.*, 722 F. Supp. 3d 745, 755 (E.D. Ky. 2024) (collecting cases). But the law does not clearly inform correctional officers that pepper spraying an actively disobedient inmate

12

constitutes excessive force. *Id*. Beraut does not meet his burden of showing Owens is not shielded by qualified immunity. Beraut's facts, taken as true do not show a violation of a clearly established constitutional right. *Reilly*, 680 F.3d at 623.

## VI. Exhaustion of Administrative Remedies

Here, summary judgment is also warranted due to failure to exhaust administrative remedies. Exhaustion of administrative remedies is mandatory under the Prison Litigation Reform Act of 1995 ("PLRA") for any lawsuit challenging prison conditions. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "There is no question [that] unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). It is not the prisoner's threshold burden to prove exhaustion; rather lack-of-exhaustion is an affirmative defense. *Id*. Once raised, the prisoner bears the burden of demonstrating proper exhaustion. And summary judgment is appropriate if the defendant can establish the absence of a "genuine dispute as to any material fact" regarding non-exhaustion. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

Prisoners must exhaust all "available" remedies—not just those that meet federal standards. *Woodford*, 548 U.S. at 85. "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id*. at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91. It is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion. *Jones*, 549 U.S. at 218.

13

An exception to the exhaustion rule exists whenever prison officials decline to enforce their own procedural requirements and opt to consider an otherwise-defaulted claim on the merits. Courts can hear such cases. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). This exception does not apply in this case.

Additionally, "A prisoner's lack of compliance may be excused if the administrative remedies are not available, but [the Sixth Circuit] has required a prisoner to make 'affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (quoting *Napier v. Laurel Cty.*, 636 F.3d 218, 223 (6th Cir. 2011)).

Here, Owens has raised lack of exhaustion as a defense. D.E. 31 at 1-2; D.E. 33 at 1-2. The record contains the documentation of Beraut's grievance. Northpoint Training Center denied the grievance because it was filed beyond the five-day deadline. Beraut challenged that denial and argued that he had not been given an opportunity to file a grievance within the allotted time. But an ombudsman and the Commissioner rejected that argument, explaining that Beraut could have requested a grievance, even during his segregation period. *See* D.E. 1-1 at 2-16. Given that prison officials have repeatedly found that Beraut had opportunity to timely file his grievance, but failed to do so, his lawsuit is barred for lack of exhaustion. And the Court cannot find on this record that administrative remedies were unavailable.

## VII. Conclusion

The undersigned **RECOMMENDS** that Defendant Owens's motion for summary judgment (D.E. 31) be **GRANTED.** Plaintiff's excessive-force claim fails on the merits. Owens is also entitled to qualified immunity. And Plaintiff Beraut did not properly exhaust his administrative remedies.

14

Any objection to this recommendation must be asserted in response to this Recommended Disposition. The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 29th day of September, 2025.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge